421 So.2d 321 (1982)
Gerald K. TATE
v.
JACOBS ENGINEERING COMPANY, et al.
No. 15062.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Writ Denied December 10, 1982.
*322 Thomas H. Matuschka, George McGowin, Baton Rouge, for plaintiff-appellant Gerald K. Tate.
E. Burt Harris, New Orleans, for defendants-appellees Exxon Corp. and George Core.
Wood Brown, III, New Orleans, for defendants-appellees Jacobs Engineering Co.; H.E. Wiese, Inc., Herman Thompson and the Aetna Ins. Co.
Michael R. Daigle, New Orleans, for intervenor-appellee Associated Indem. Corp.
Before COVINGTON, LEAR and LANIER, JJ.
COVINGTON, Judge.
The plaintiff, Gerald K. Tate, has devolutively appealed the judgment of the trial court in favor of defendants, Jacobs Engineering Company, H.E. Wiese, Inc., Exxon Corporation, George E. Core, Herman A. Thompson, Ira Samuel Graham, and Aetna Insurance Company. We affirm.
Plaintiff, an iron worker out of Local 623 in Baton Rouge, while engaged as an employee of H.E. Wiese, Inc. in certain construction work on property of Exxon Corporation, having to do with a water treatment facility, sustained a severe injury to his left wrist, when the heavy lid on a "gang-box" (a large box in which certain heavy tools for the job were kept for each particular craft) slammed shut on plaintiff's wrist.
As a result of this accident, with resulting injury, plaintiff sued Jacobs Engineering Company, H.E. Wiese, Inc., and Exxon Corporation alleging that they owed to Tate a duty of care to provide him with safe equipment and a safe place in which to work. Plaintiff also sued Thompson, Graham and Core, alleging that the aforesaid duty had been delegated to them as executive officers of the defendant corporations. Aetna was named as the liability insurer for Jacobs and Wiese. Associated Indemnity Corporation, as workers' compensation carrier of Wiese, intervened to recover its compensation payments. Plaintiff alleged that his damages were caused by the failure of the named executive officers to discharge their duties and by their negligence in general. It is further alleged that plaintiff's injuries were caused by the negligence of the corporate defendants in the design, composition and manufacture of the "gang-box". In addition, it was alleged that the defendants were strictly liable since they had custody of the box, which contained certain vices and defects. The defendants generally denied any negligence, as well as any negligence in the design, composition or manufacture of the "gang-box" in question. They denied the applicability of a theory of strict liability. They also defended on the basis of contributory negligence and assumption of risk.
At the completion of plaintiff's case, a motion for a directed verdict was granted insofar as all defendants, except H.E. Wiese, Inc., Herman Thompson, and Ira Samuel Graham, were concerned.
At the conclusion of the trial, the trial court rendered judgment in favor of the remaining defendants, dismissing plaintiff's suit.
Plaintiff first relies upon a theory of strict liability under LSA-C.C. art. 2317.[1] In an Article 2317 action, in order to be successful, the plaintiff must prove that a thing within the care, custody or control (or garde) of the defendant caused damage to the plaintiff because of a defect which created *323 an unreasonable risk of harm to another. See Loescher v. Parr, 324 So.2d 441 (La.1975); Poole, Does Louisiana Really Have Strict Liability Under Civil Code Articles 2317, 2318, and 2321? (Comment), 40 LLR 207 (1979). Under this theory, as propounded by Loescher, if the thing is unreasonably dangerous to normal use in its current condition, the one having garde of the thing is responsible to the one injured in the course of that use of the thing. Greene v. Catalytic, Inc., 341 So.2d 1172 (La.App. 1 Cir.1977), writ denied, 344 So.2d 4 (La.1977).
In reaching his decision, the trial judge rendered oral reasons for judgment, in part, as follows:
"As a result of the testimony involved herein as well as the evidence that's been introduced, it's the opinion of the Court that the testimony and evidence presented does [do] not establish liability on the basis of Article 2317 of the Civil Code. According to the jurisprudence of our state, plaintiff must establish that the thing which caused the injury, in this case the gang-box, was in the care and custody of the defendants. The Court is of the opinion that plaintiff has failed to establish by a preponderance of the evidence that the gang-box in question was indeed in the care and custody of the defendants. The undisputed testimony of all the witnesses in this case is that control over the keys to the gang-box, the positioning of the gang-box on the jobsite, its care and use, were all under the control of the particular trade which used the gang-boxes.
"In the instant case, the only act which the defendants [Wiese] performed as to the gang-boxes was to manufacture the same and provide them to the various trades for the use and storage and protection of the tools provided to those trades for the performance of their trade. At no time pertinent to the accident in question was the gang-box in the custody or control of any of the defendants.
"In order to establish liability under 2317, the plaintiff must further show that the instrumentality in question was defective, and by defective we mean as defined in the case of Rodrique v. Dixilyn Corporation, a federal case of the Fifth Circuit, found at 620 F.2d 537, a decision written by Judge Tate, formerly of our Supreme Court, where it is found that a defect is a condition which causes an unreasonable risk or injury to another. It's the opinion of the Court that the gang-box in question was not defective under that definition. The existence of a heavy lid with a potential to cause serious injury should it fall on an individual using that gang-box does not itself establish that the box was defective.
. . . . . .
"So it is in the Court's opinion with the gang-box involved here. It is not defective simply because the lid of the box can fall if it is not pushed back far enough and supported properly as had been done on many occasions previously by this very plaintiff.
"As to the question of the alleged inadequate length of the chain on the lid of the gang-box creating a defect, as far as that particular gang-box was concerned, it's the opinion of the Court that insufficient evidence has been presented to establish that indeed the chain was too short to allow the lid of the box to swing back far enough past the perpendicular to prevent an unreasonable risk of accidental closing of the lid. There are many other equally tenable explanations as to the cause of the lid slamming shut on the plaintiff's hand, not the least of which is his own failure to properly open and secure it as well as the improper location of the box on an uneven shell surface creating instability. The plaintiff has failed to carry his burden of proof in establishing that the cause of the accident was a defect consisting of the inadequate length of the chain attached to the lid and to the side of the box or any other defect in the box itself."
The trial court found that the testimony and evidence presented failed to establish liability on the basis of LSA-C.C. art. 2317. According to the jurisprudence, *324 the plaintiff must establish that the thing, the gang-box in this case, was in the garde of the defendants. Hall v. City of New Orleans, 400 So.2d 265 (La.App. 4 Cir.1981). The record shows that the thing involved was not under the care, custody, or control of any of the defendants at the time of the accident. The evidence shows, as the trial court found, that control over the keys to the gang-box, the positioning of the gang-box on the jobsite, and its care and use, were all under the control of the iron workers, the particular trade which used this gang-box.
Moreover, the record does not reveal that the evidence establishes a defect which created an unreasonable risk of harm to another. Under the Supreme Court's interpretation of "defect" in Loescher, the "gang-box" in the instant case was not a defective thing. Loescher v. Parr, 324 So.2d at 446; Greene v. Catalytic, Inc., supra.
We hold that the record establishes that the trial judge's finding in favor of the defendants on the issue of strict liability is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The plaintiff has also sued under a theory of negligence under LSA-C.C. arts. 2315, 2316. Conduct is negligent if it falls below that standard of conduct which the law has established for the protection of others against an unreasonable risk of harm; that is, it is a departure from conduct which is expected of a prudent man under like circumstances. See Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La.App. 1 Cir.1981), writ denied, 401 So.2d 988 (La.1981); Stone, 12 Louisiana Civil Law Treatise, Tort Doctrine, § 273, pp. 381-382 (1977).
We are of the opinion that the conduct of the defendants does not constitute negligence. There is no evidence in the record to indicate that the defendants were in any way negligent. In finding that the defendants were not negligent, the trial judge stated, in his oral reasons, as follows:
"The second theory on which plaintiff seeks to base liability of the defendants is the basic principle of negligence as contained in Louisiana Civil Code Article 2315. In order to establish actionable negligence on the part of Thompson or Graham it is necessary for the plaintiff to establish a duty owed to him by the employer, the delegation of that duty to Thompson or Graham in such a manner as to create a duty owed by them personally to the plaintiff, a personal breach of that duty by Thompson or Graham, and that the breach of the duty caused the plaintiff's injury. Jurisprudence to this effect can be found in the cases cited by both counsel, namely, Canter v. Koehring, 283 So.2d 716 and Smolinski v. Taulli, 276 So.2d 286.
"Even assuming the initial question of the delegation of the employer's duty to either Thompson or Graham, or to both of them, an assumption which is not entirely justified by the evidence presented by plaintiff, there remains the significant question of a breach of that duty and the causative relation between the breach and the injury to the plaintiff. Plaintiff charges the two defendants with negligence in failing to provide an adequate safety program, including training and meetings, and failing to provide adequate and safe equipment to the plaintiff in carrying out of his work assignments. As to the safety program, there is no evidence supporting a cause in fact relationship between the lack of a well organized safety program and the injury to the plaintiff. The task assigned to the plaintiff which gave rise to his injury was relatively simple and well within his training, experience and capability. The plaintiff was in the best position to discover any defect in the design of the gang-box which might have created a risk of injury, as he was the one who used it daily to store and distribute the tools it contained to the members of the gang of which he was a part. Plaintiff used the gang-box regularly for a significant period of time with no injury, and his experience with it should have been more than *325 adequate warning of any potential hazard. Further, the plaintiff was in the best position to prevent the accident in question from happening by simply making sure that no matter what the length of the chain on the lid and no matter what the positioning of the gang-box, that before he exposed himself to the hazard of the lid falling on him that he take whatever steps were necessary in the nature of positioning of or support of the lid to make sure that it did not fall on him while he was removing tools from it or while he was preparing to do so.
"There is nothing in the evidence to indicate that a more sophisticated safety program at the plant would have prevented the accident which gives rise to this lawsuit. There is no basis for finding actionable negligence on the part of either Thompson or Graham in connection with the overall safety program at the plant, including the lack of regular and thorough inspections of the gang-boxes in use on the jobsite.
"Accordingly, for oral reasons assigned, it is the ruling of the Court that the plaintiff has failed to establish liability on the part of any of the defendants in this suit for the injuries that he received and that therefore the plaintiff's action is necessarily dismissed at his cost ...."
As stated above, Jacobs Engineering was dismissed on a directed verdict. There was no evidence that it had any connection with the incidents that were the subject of the lawsuit other than being the parent company of Wiese, the employer of Tate. Exxon and Core, its employee, also had no connection with the incidents giving rise to the lawsuit. There was no evidence of any negligence on the part of either of these defendants. Exxon (and its employee) had nothing to do with the design, construction or maintenance of the gang-box. Neither Exxon nor Core had any garde over the gang-box. The trial court properly sustained a motion for a directed verdict as to these defendants.
The suit against H.E. Wiese, Inc. must also be dismissed, because Wiese is the employer of Tate. The exclusivity of Workmen's (Workers') Compensation as a remedy to an employee is definitely established. LSA-R.S. 23:1031, 1032; Courtney v. BASF Wyandotte Corporation, 385 So.2d 391 (La.App. 1 Cir.1980), writ denied, 386 So.2d 359 (La.1980).
As stated above, the individual defendants were in no way negligent and they did not have garde over the gang-box involved in the injury to Tate.
We have carefully read the record, and find that the trial judge has correctly disposed of the factual and legal issues presented by this case.
Accordingly, for the assigned reasons, the judgment is affirmed at plaintiff-appellant's costs.
AFFIRMED.
NOTES
[1] C.C. art. 2317 states:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."