907 So.2d 96 (2005)
GULFSTREAM SERVICES, INC.
v.
HOT ENERGY SERVICES, INC.
No. 2004 CA 1223.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
Writ Denied June 17, 2005.
*98 C. Berwick Duval, Houma, Counsel for Plaintiff/Appellee Gulfstream Services, Inc.
Gerald C. deLaunay Lafayette, Counsel for Defendant/Appellant Hot Energy Services, Inc.
Before: PARRO, KUHN, and WELCH, JJ.
WELCH, J.
Plaintiff, Gulfstream Services, Inc. (Gulfstream), sued defendant, Hot Energy Services, Inc. (Hot), on an open account. Although the trial court found no sale, lease, or open account agreement between the parties, the trial court awarded Gulfstream $31,050.00 for the use of its equipment, with interest from the date of judicial demand. Hot appealed. Gulfstream answered the appeal, asking for attorney fees under the open account statute, La. R.S. 9:2781(A). We amend the award of interest and affirm.

FACTS AND PROCEDURAL BACKGROUND
Hot, an oil field services business, stored hot oil in portable tanks secured to barges. The tanks were barged to well sites, where the hot oil was used to clean oil well flow lines. In April of 2002, the United States Coast Guard complained about the tanks and barge system used by Hot. In an attempt to avoid or overturn a cease and desist order issued by the Coast Guard, Hot contacted Gulfstream, a specialty rental tool company. From Gulfstream, Hot hoped to obtain Coast Guard certified tanks. Gulfstream and Hot discussed various options for the acquisition and use of the approved tanks: lease, lease-purchase, and sale. Although Hot generally agreed to a daily rental rate of $75.00 per tank if a lease agreement was chosen, no final *99 agreement between the parties was confected.
On April 20, 2002, while negotiations were still ongoing, Hot requested delivery by Gulfstream of two 100-barrel portable marine tanks. Hot accepted the tanks, and admittedly used them in its business. From April until at least October, Hot continued its attempts to satisfy the Coast Guard and subsequent state requirements. Although Gulfstream eventually sent a delivery ticket showing a rental rate, and several invoices requesting payment of rental fees, Hot made no payments. Eventually, Hot received permission from the Coast Guard to use tanks other than the type supplied by Gulfstream. Hot returned the tanks to Gulfstream on November 27, 2002.
On November 22, 2002, Gulfstream filed a petition on an open account, alleging past due rental payments owed by Hot for the use of the two tanks. Gulfstream submitted invoices totaling $31,050.00. Hot answered and denied the existence of an open account or lease agreement. Instead, Hot asserted its belief that a lease-purchase agreement had been reached, subject to finalization of the specific terms.
After a trial on February 3, 2004, the trial court issued oral reasons. The trial court found that various options for the tanks had been negotiated, but the parties had accepted none of the discussed options. Nor had the parties agreed to an open account. However, the trial court also found that Hot had received and used two of Gulfstream's tanks in Hot's business from April through November. Thus, Gulfstream was entitled to some benefit or return for use of the tanks. Further, the trial court noted that Hot had agreed to $75.00 a day for each tank as a rental fee for the lease option. Based on the rental rate and the number of days Hot possessed the tanks, the trial court determined that $31,050.00 was a reasonable recovery for Gulfstream. However, in the absence of an agreement for an open account, the trial court denied Gulfstream's request for attorney fees. By judgment rendered on February 3, 2004, the trial court awarded $31,050.00 to Gulfstream, with interest from the date of judicial demand.
On appeal, Hot essentially argues that the trial court erred in its award of damages in the absence of an agreement. Hot also argues that any remedy based on unjust enrichment, or its civilian counterpart, actio de in rem verso, was not properly pleaded. Alternatively, if such a quasi-contractual remedy did exist, Hot asserts the trial court used the wrong measure of damages. And finally, Hot assigned error to the award of legal interest from the date of judicial demand, rather than the date of judgment. In Gulfstream's answer to the appeal, it asserts the existence of an open account agreement, and prays for the attorney fees allowed by La. R.S. 9:2781(A).

EXISTENCE OF A CONTRACT OR AGREEMENT
The existence of a contract, and specifically an open account, are questions of fact. Townsend v. Urie, XXXX-XXXX, p. 6 (La.App. 1st Cir.5/11/01), 800 So.2d 11, 15, writ denied, XXXX-XXXX (La.9/21/01), 797 So.2d 674; Sandoz v. Dolphin Services, Inc., 555 So.2d 996, 997 (La.App. 1st Cir.1989). A reviewing court may not set aside a trial court's finding of fact absent manifest or clear error. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
*100 Louisiana Revised Statute 9:2781(D) provides that an open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." An open account necessarily involves an underlying agreement between the parties on which the debt is based. Heck v. Lafourche Parish Council, 2002-2044, p. 17 (La.App. 1st Cir.11/14/03), 860 So.2d 595, 607, writ denied, XXXX-XXXX (La.3/19/04), 869 So.2d 837; Montgomery Stire & Partners, Inc. v. London Livery, Ltd., 99-3145, p. 4 (La.App. 4th Cir.9/20/00), 769 So.2d 703, 706. If a debtor "fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed," the debtor "shall be liable to the claimant for reasonable attorney fees . . . when judgment on the claim is rendered in favor of the claimant." La. R.S. 9:2781(A).
At trial, Gulfstream's representatives, Mr. Mark Chauvin and Mr. Michael Mire, agreed that options for the tanks were discussed, but no agreement was ever finalized. Gulfstream began sending the invoices for rental payments when it became concerned over the absence of an agreement on one of the options. Hot's general manager, Mr. James R. Hunt, testified that Hot had previously paid the $75.00 rate for tank rental, and had agreed to the same rate if a lease was executed. Although Mr. Hunt testified that he believed a lease-purchase option was available as late as October, he admitted that no contract or agreement was ever finalized. The record contains no evidence of the parties' intent or agreement to extend credit or create an open account for the tanks. Therefore, from our thorough review of the record, we find no manifest or clear error in the trial court's finding that the parties failed to reach an agreement on the lease or purchase of the tanks, and that an open account was not established. In the absence of an agreement on an open account, we also find no error in the trial court's denial of, attorney fees to Gulfstream.[1]

ENRICHMENT WITHOUT CAUSE
The trial court did not denominate the basis underlying its monetary award. However, in its brief, Hot argues that the trial court erred if it based the recovery on contractual quantum meruit or unjust enrichment. Contractual quantum meruit has been used in Louisiana to denote a partial or implied contract that failed to agree on price. The term "quantum meruit" has also been used in cases without a contract for a recovery actually based on the quasi-contractual principles of unjust enrichment and the similar civilian actio de in rem verso. See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569, 574-75 (La.1989); Howell v. Rhoades, 547 So.2d 1087, 1089 (La.App. 1st Cir.1989). After finding that no agreement existed in this case, the trial court could not use contractual quantum meruit as the basis for its award. See Howell, 547 So.2d at 1089. From its oral reasons, it is most likely that the trial court relied on the principles of unjust enrichment or actio de in rem verso.
In the absence of a contract or agreement, the only legal remedy available in this case arises under La. C.C. art. 2298. See Howell, 547 So.2d at 1089. Article 2298, entitled "[e]nrichment without *101 cause," incorporates the principles of unjust enrichment and actio de in rem verso. Specifically, it provides as follows:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.
To prove a case of enrichment without cause, the plaintiff must demonstrate: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment; (4) the absence of justification or cause for the enrichment and impoverishment; and, (5) the lack of any other remedy at law. Coastal Environmental Specialists, Inc. v. Chem-Lig International, Inc., XXXX-XXXX, pp. 9-10 (La.App. 1st Cir.11/9/01), 818 So.2d 12, 19; Scott v. Wesley, 589 So.2d 26, 27 (La.App. 1st Cir.1991). A person is enriched when his assets increase, without adequate compensation, or his liabilities diminish. Scott, 589 So.2d at 27; La. C.C. art. 2298, Revision Comments-1995(b); Albert Tate, Jr., The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. 446, 447 (1977). Conversely, one is impoverished when assets are diminished, a "justified expectation of gain" is prevented, or liabilities increased. Tate, The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. at 447; Scott, 589 So.2d at 27; La. C.C. art. 2298, Revision Comments-1995(b).
Although Gulfstream did not plead enrichment without cause by name, Louisiana remains a fact pleading state and "[n]o technical forms of pleading are required." La. C.C.P. art. 854; Baker v. Maclay Properties Company, 94-1529, pp. 16-18 (La.1/17/95), 648 So.2d 888, 896-97. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading." La. C.C.P. art. 1154. "Except in the case of a default judgment, every final judgment must grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." T.L. James & Company, Inc. v. Kenner Landing, Inc., 562 So.2d 914, 915 & 917 (La.1990); La. C.C.P. art. 862; La. C.C.P. art. 2164; see Baker, 94-1529 at p. 18, 648 So.2d at 897 (Incorrect designation of quantum meruit for an action for unjust enrichment did not invalidate claim). Thus, the threshold inquiry is whether Gulfstream pled or raised, without objection, a claim for enrichment without cause.
A review of the record reveals an ample basis for a claim under La. C.C. art. 2298. Although it is not required, Gulfstream prayed for all general and equitable relief. See La. C.C.P. art. 862. The necessary facts underlying the connected questions of whether Hot's use of the tanks was beneficial, and whether the benefit was gained without adequate compensation, were pled or placed before the trial court, without objection. The issues of whether an agreement on one of the options was finalized and whether another legal remedy *102 existed, such as an open account, were raised by both parties.
From our review, we also find that the record reasonably supports a finding that Gulfstream established the legal requisites for enrichment without cause. The parties had no contract or agreement for lease or purchase of the tanks, nor was an open account created. Gulfstream provided a direct benefit to Hot, who was helped or enriched by use of Gulfstream's tanks in Hot's attempt to obtain Coast Guard approval. Gulfstream, who was in the business of tool rental, had a justified expectation of gain and claimed impoverishment based on Hot's refusal to pay for its beneficial use of the tanks. On the issue of whether Hot's failure to respond to the rental invoices implied acceptance of a lease, the trial court could have reasonably found that negotiations were ongoing at the time the invoices were sent or that Hot believed the rate was not set until an agreement was finalized. The record also reasonably supported a finding that Gulfstream aided Hot in its attempt to secure government approval of its operations. Despite Hot's assertion that the tanks did not meet Coast Guard standards, Hot used the tanks, sought a lease-purchase agreement in October, and did not return the tanks until November, after Gulfstream filed suit.
Thus, Gulfstream established a connected enrichment and impoverishment, with no apparent justification or cause for the connected transaction, in the absence of another legal remedy. Hot's argument that Gulfstream would only be impoverished if it had rented all of its other tanks is unsupported. Gulfstream delivered the tanks on demand, and invoiced the tanks as a rental, thereby removing them from available inventory. There is no authority to support the proposition that an equipment rental company is required to deplete its rental inventory of all similar items before a loss can be claimed for the unremunerated use of its equipment.

MEASURE OF COMPENSATION
As previously stated, impoverishment is the loss of assets, increase in liabilities, or "the prevention of justified expectation of gain." Tate, The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. at 447; see Coastal Environmental Specialists, Inc., XXXX-XXXX at p. 9, 818 So.2d at 19; Scott, 589 So.2d at 27; La. C.C. art. 2298, Revision Comments-1995(b). Enrichment may be measured by a gain in assets, an economic benefit for which defendant has not fairly paid, or reduction of his liabilities. Coastal Environmental Specialists, Inc., XXXX-XXXX at p. 9, 818 So.2d at 19; Scott, 589 So.2d at 27; La. C.C. art. 2298, Revision Comments-1995(b); Tate, The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. at 447. In a case of enrichment without cause, the "amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less." La. C.C. art. 2298. Thus, for example, claimant's recovery for his impoverishment may not exceed the defendant's enrichment. See Howell, 547 So.2d at 1089 n. 2 & 1090.
At trial, Mr. Chauvin testified that Gulfstream's normal rental rate ranged from a low of $75.00 to $110.00, and showed that Hot had paid that rate in past transactions. Hot's representative, Mr. Hunt, agreed that the $75.00 rate was reasonable. Although Hot claimed it customarily paid only for the days the tanks were actually used in the business, the trial court could have reasonably rejected that version of the events based on the overall testimony. We also note that Hot provided *103 no evidence for an alternative measure of compensation. Although the parties discussed a purchase price, it was not unreasonable or clear error for the trial court to find that the rental rate better approximated Gulfstream's impoverishment. In addition, Hot provided no objective evidence of a lower local or customary commercial rate as an alternative basis for measurement. From our review, the record also supports a finding that Hot's request for an emergency delivery and its use of the tanks while attempting to avoid the Coast Guard's order only added to the benefit derived by Hot. Such circumstances placed the level of Hot's enrichment at or above Gulfstream's impoverishment for the mere loss of rental fees. Thus, the level of impoverishment did not exceed the level of enrichment. See La. C.C. art. 2298.
For these reasons, we see no abuse of the trial court's "vast" discretion in its award of $31,050.00 as the proper measure of compensation. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993); see La. C.C. arts. 1999 and 2324.1. Contrary to Hot's argument, any apparent similarity in the amount of damages, whether calculated under the quantum meruit standard of reasonable value or the impoverishment-enrichment standard, is not determinative of the validity of either. The amount of damages is dependant on the facts of each case. See Howell, 547 So.2d at 1089-90. (Although contractual quantum meruit and traditional unjust enrichment damages are measured using different standards, the calculated award may be the same depending on the particular facts underlying the case).

INTEREST
Hot argues that the interest should not run from the date of judicial demand in a case seeking unliquidated damages. We agree. For unliquidated or quasi-contractual damages, such as enrichment without cause, interest runs only from the date of judgment. Howell, 547 So.2d at 1090.
For these reasons, we amend the judgment to award interest only from the date of the trial court's judgment. The remainder of the judgment is affirmed. The costs of the appeal are assessed to defendant-appellant, Hot Energy Services, Inc.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Having found merit in the trial court's denial of attorney fees under the open account statute, we deny Gulfstream's motion to supplement the record with an affidavit showing the cost of legal fees on appeal.